UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-20713-CIV-McALILEY

[CONSENT CASE]

ROMIKA-USA, INC., a Florida
corporation,

                Plaintiff,

v.

HSBC BANK USA, N.A., a national
banking association; and COLUMBIA
SPORTSWEAR COMPANY, a
foreign corporation,

                Defendants.
_____/

**ORDER GRANTING SUMMARY JUDGMENT
FOR DEFENDANT COLUMBIA ON COUNTS II AND IV
AND DISMISSING COUNT III WITHOUT PREJUDICE**

    Pending before this Court is Defendant Columbia Sportswear Company's Motion for Summary Judgment. [DE 127].[1] Three counts remain in Romika-USA's Amended Complaint, all of which seek recovery from Columbia [DE 49]:[2] tortious interference with a business relationship (Count II), breach of contract (Count III) and breach of a third-party beneficiary contract (Count IV). Columbia urges that summary judgment be entered in its favor on all three counts.

---

[1] After the motion was fully briefed, oral argument was held on April 11, 2007.

[2] This Court previously allowed Romika-USA to dismiss with prejudice Count I, its only claim filed against Defendant HSBC Bank. [DE 70].

After Columbia filed its summary judgment motion, Romika-USA moved for leave to dismiss its breach of contract claim, Count III of the Amended Complaint. [DE 143]. In its motion Romika-USA states that its breach of contract claim is the subject of litigation in Canada between Romika-Canada and Columbia of Canada, and for this reason Romika-USA does not need to litigate the claim here. Romika-USA filed its motion pursuant to Federal Rule of Civil Procedure 41(a)(2), but did not specify whether it sought dismissal with or without prejudice. At the April 11, 2007 oral argument Romika-USA clarified that it seeks dismissal without prejudice, and expanded its motion to request voluntary dismissal of Count IV. [DE 151].

For the reasons that follow, this Court grants Columbia's motion for summary judgment as to Counts II and IV. Further, it grants Romika-USA's motion to dismiss Count III without prejudice, but conditions any future refiling of that claim on Romika-USA's first paying Columbia the taxable costs and reasonable attorneys' fees it incurred in defending this action.

**I.   The Summary Judgment Motion**

The following basic facts are not in dispute.

On August 21, 2003 Columbia and Romika-USA entered into a contract, known as the Supply Agreement, under which Romika-USA agreed to manufacture footwear for Columbia.[3] The Supply Agreement permitted Romika-USA, with Columbia's prior approval, to engage subcontractors to assist Romika-USA in fulfilling its obligations under the

---

[3] The Supply Agreement is Exhibit 2 to the Deposition of Deepak Deshponde, Romika-USA's former President and CEO. [DE 135, Ex. 2].

agreement. [DE 135, Ex. 2, ¶ 15.5]. Consistent with the agreement, Romika-USA subcontracted a third party, Romika-Canada, Inc., to manufacture footwear for Columbia in Canada. [DE 49, ¶ 13; DE 132, pp. 18-19].

After troubles arose surrounding the shipment of shoes manufactured by Romika-Canada and Columbia's payment for those shoes, representatives of Columbia, Romika-USA and Romika-Canada met in Canada, and at the conclusion of that meeting entered into a one-page contract dated September 17, 2004, known here as the Letter Agreement.[4] [DE 134, pp. 222, 225-26]. The Letter Agreement stated that Romika-Canada would manufacture winter boots ordered by Columbia, ship the boots to Columbia customers, and issue invoices in the name of Columbia, and that Romika-Canada would forward copies of those invoices to Romika-USA, which in turn would forward "the necessary documentation" to Columbia for payment. [DE 49, Ex. A]. The Letter Agreement further provided that Columbia would send payment "directly to Romika-Canada in Toronto, Canada. Per L/C Payment." [*Id*.].

The phrase "per L/C Payment" was handwritten on the Letter Agreement by Brian McCann, Columbia's signatory to that agreement. [DE 134, pp. 235-36]. It reflected the parties' agreement that payments to Romika-Canada under the Letter Agreement would only be made pursuant to a Canadian letter of credit that Columbia had opened with HSBC Bank, U.S.A., N.A ("HSBC" or "the bank"). [DE 49, ¶¶ 11, 30, 42, 51; DE 134, pp. 231-37; *see also* DE 130, ¶ 6].[5] In its letter of credit HSBC pledged to honor Romika-USA's drafts so

---

[4] The Letter Agreement is attached as Exhibit A to the Amended Complaint. [DE 49].

[5] The letter of credit referred to in the Letter Agreement is Exhibit 4 to the deposition of Deepak Deshponde. [DE 135, Ex. 4].

long as they were accompanied by the specific documents identified in the letter.[6] The letter of credit addressed the possibility of Romika-USA's presenting documents that did not conform to the requirements of the letter, by reserving to the bank the right to make payments to Romika-USA if the bank received a waiver of the discrepancies from Columbia. [DE 135, Ex. 4]. Finally, because the letter of credit was transferable, Romika-USA, as the beneficiary under the letter, could, in connection with its drafts to HSBC, assign to a third party (in this case, Romika-Canada) the right to receive payments under the letter of credit. [DE 130, ¶ 7].

Romika-Canada manufactured, shipped and invoiced boots pursuant to the Letter Agreement, but many of the documents Romika-USA presented to HSBC when seeking payment did not conform to requirements of the letter of credit. [DE 130, ¶ 8, DE 133 pp. 44-45, 50]. In those instances the bank forwarded the discrepant documents to Columbia, and Columbia communicated with Romika-USA in an effort to reconcile Romika's documents with Columbia's records. [DE 130, ¶¶ 13-15; DE 133, pp. 44-45, 50]. In many instances Romika-USA provided supplemental information to Columbia that satisfied Columbia that payment was due, and Columbia notified the bank that it waived the corresponding discrepancies, causing the bank to issue payments to Romika-USA. [DE 130 ¶ 8]. In other instances Columbia and Romika-USA were not able to reconcile the conflicting documentation, and Columbia thus did not waive Romika-USA's obligation to

---

[6] Some of the documents required by the letter of credit were signed invoices referring to particular purchase order numbers, copies of trucking, ocean or air bills of lading, copies of packing lists, and original certificates of inspection signed by Columbia. [DE 135, Ex. 4; *see also* DE 49, ¶ 14].

present documents to HSBC that conformed with the letter of credit.

Romika-USA's three causes of action all arise from those drafts presented by Romika-USA (for footwear manufactured by Romika-Canada pursuant to the Letter Agreement) to HSBC for which payment was not made. Importantly, both counsel agreed at oral argument that for each instance of non-payment, the documents Romika-USA presented the bank did not conform to the requirements of the letter of credit, and Columbia declined to waive those discrepancies.

### A. The Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Accepting this evidence as truthful, the Court must view the record and all factual inferences in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

In opposing a proper motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead there must be enough evidence for a jury to reasonably find for that party. *Anderson*, 477 U.S. at 252. *See also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). With these principles in mind, the Court turns to Columbia's summary judgment motion.

**B.     Count II, Tortious Interference**

In Count II Romika-USA claims Columbia tortiously interfered with its business relationship with HSBC by instructing the bank to not honor Romika-USA's drafts. [DE 49, pp. 4-5]. There are several reasons why Columbia is entitled to summary judgment on Count II.

**1.     Columbia Is Not a Third Party to the Business Relationship**

As an initial matter it is doubtful that Columbia, an indispensable player in the letter-of-credit relationship between HSBC and Romika-USA, can, as a matter of law, be liable to Romika-USA for tortious interference. Under Florida law, a claim for tortious interference cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party. "In other words, the interfering defendant must be a third party, a stranger to the business relationship." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (citations and internal quotation marks omitted). *Accord Sobi*

6

*v. Fairfield Resorts, Inc.*, 846 So. 2d 1204, 1207-08 (Fla. 5th DCA 2003); *Masciarelli v. J.D. Aiken Co., Inc.,* 770 So. 2d 726 (Fla. 4th DCA 2000); *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So. 2d 381, 386 (Fla. 4th DCA 1999). *See also Nimbus Techs., Inc. v. Sunndata Prods., Inc.*, No. 06-10657, 2007 WL 1138861, at *4 (11th Cir. April 18, 2007) (applying Alabama law).

While this Court is unaware of any published decision that addresses a claim of tortious interference in the letter-of-credit context, a Florida decision often cited for this principle presents analogous facts and strongly suggests that Columbia cannot be liable for tortious interference here. In *Genet Co. v. Annheuser-Busch, Inc.,* 498 So. 2d 683 (Fla. 3d DCA 1986) the court considered a claim of tortious interference that arose in a different three-party relationship. There the plaintiff, Genet, contracted to purchase from Lopez an Annheuser-Busch, Inc. wholesalership. Lopez had acquired the wholesalership pursuant to Annheuser-Busch's Wholesaler Equity Agreement, which reserved to Annheuser-Busch the right to approve Lopez's transfer of ownership of the business. Thus, Lopez's contract for sale to Plaintiff expressly conditioned the sale upon Annheuser-Busch's approval. When Annheuser-Busch did not approve the sale, Genet sued Annheuser-Busch for tortiously interfering with its business relationship with Lopez. The trial court granted summary judgment in favor of Annheuser-Busch ("A-B"), which the appellate court affirmed with these observations:

> Under Florida law, a cause of action for tortious interference does not exist against one who is himself a party to the business relationship allegedly interfered with. Because plaintiff's agreement with Lopez was specifically conditioned upon A-B's approval, as a matter of law, A-B cannot be liable for

7

>tortious interference with their agreement. *A-B had the contractual right*, as specified in the Equity Agreement, *to approve or disapprove any proposed transfer* of Lopez's wholesalership. *Thus, A-B was not a disinterested third party to plaintiff's agreement.* Moreover, what the Genets sought, through their agreement with Lopez, was to obtain an A-B wholesalership and enter into an Equity Agreement with A-B. Thus, A-B was the source of the business opportunity which plaintiffs sought. *The tort of willful interference with a business relationship does not exist where the defendant was the source of the business opportunity allegedly interfered with.*

*Genet*, 498 So. 2d at 684 (citations omitted; emphasis added). There are a number of parallels between the facts in *Genet* and the undisputed facts here. First, Columbia certainly was not a disinterested third party to the letter of credit relationship between HSBC and Romika-USA. Instead, Columbia engaged HSBC to issue the letter of credit to Romika-USA, and thus was the "source" of the relationship it is accused of interfering with. Second, like Anheuser-Busch, Columbia had the contractual right to "interfere"; here, to not waive Romika-USA's obligation to provide the bank with the documents that conformed to the letter of credit. Following the reasoning of *Genet*, under Florida law Columbia, as Romika-USA's customer and the party that engaged HSBC to issue the letter of credit, could not be held liable here for tortious interference for its refusal to waive the discrepancies in Romika-USA's documents.

### 2.    Columbia Did Not Unjustifiably Interfere

Florida law clearly sets forth four elements for a claim of tortious interference. Romika-USA must prove: (1) the existence of a business relationship between Romika-USA and HSBC; (2) Columbia's knowledge of that business relationship; (3) that Columbia intentionally and unjustifiably interfered with that business relationship and (4) that Romika-

8

USA suffered damages as a result. *Gregg v. U.S. Indus., Inc.,* 887 F.2d 1462, 1473 (11th Cir. 1989); *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So. 2d 812, 814 (Fla. 1994). In its motion Columbia focuses on the third element and argues there is no evidence that Columbia intentionally and unjustifiably interfered with Romika's business relationship with HSBC. This Court agrees.

To be liable for tortious interference a defendant must have both "the intent to damage the business relationship and a lack of justification for doing so." *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.,* 391 F. Supp. 2d 1148, 1165 (S.D. Fla. 2005); *see also NetworkIP, LLC v. Spread Enters., Inc.,* 922 So. 2d 355, 358 (Fla. 3d DCA 2006). Under Florida law, a company's actions are justified when undertaken to protect its own business interests, such as to reduce the risk of loss. So long as the company does not engage in improper conduct, it may take steps to protect its business interests without liability for tortious interference. *NetworkIP*, 922 So. 2d at 358; *Ethyl Corp. v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980); *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.,* 162 F.3d 1290, 1321 (11th Cir. 1998) ("Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged."); *Metzler v. Bear Automotive Serv. Equip. Co., SPX*, 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998) ("Lawful competitive practices are privileged under Florida tortious interference law. As long as no improper means are employed, business activities taken to safeguard or promote one's own financial interests are

not actionable.") (citations omitted).[7]

Florida law also provides that there is no cause of action for tortious interference "when a contract provision expressly reserve[s] the right to interfere." *McCurdy v. J.C. Collis,* 508 So. 2d 380, 384 (Fla. 1st DCA 1987). *Accord Weisfeld v. Peterseil School Corp.*, 623 So. 2d 515, 519 (Fla. 3d DCA 1993) (Gersten, J., concurring specially). *See also Peninsula Fed. Sav. & Loan Ass'n v. DKH Props., Ltd.*, 616 So. 2d 1070, 1072-73 (Fla. 3d DCA 1993); *Genet Co.,* 498 So. 2d at 684; *Florida Tel. Corp. v. Essig,* 468 So. 2d 543, 544-45 (Fla. 5th DCA 1985).

Here, the parties' agreement that the letter of credit was the only mechanism for payment is undisputed. Columbia was contractually entitled, under the Letter Agreement and the letter of credit, to have HSBC pay Romika-USA on its behalf only when Romika-USA presented the documents required by the letter of credit, or when Columbia, in its sole discretion, chose to waive this requirement. Columbia was entitled by contract to refuse to waive discrepancies in Romika-USA's documents,[8] and it was certainly acting to protect its own business interests when it did so. Columbia cannot be held liable for tortious interference on these facts.

There is no evidence that Columbia acted improperly when it failed to waive Romika-

---

[7] This right to protect one's business interests is sometimes referred to as a "privilege" to interfere. *See, e.g., Ernie Haire Ford, Inc.,* 260 F.3d at 1294 n.9; *Ethyl Corp.*, 386 So. 2d at 1224; *McCurdy*, 508 So. 2d at 383-84; *Metzler*, 19 F. Supp. 2d at 1364; *Johnson Enters. of Jacksonville, Inc.*, 162 F.3d at 1322.

[8] This arrangement is common to letters of credit. As one court observed, "[w]hile discrepant drafts are routinely honored, neither [the bank nor the customer] was required to accept nonconforming drafts." *DeSmeth v. Bank of New York,* 879 F. Supp 13, 15 (S.D.N.Y. 1995).

10

USA's discrepant documents. "Improper conduct" has been defined as "the purposeful causing of a breach of contract." *McCurdy*, 508 So. 2d at 384. Florida Standard Jury Instruction (Civil) MI 7.2 defines improper interference as including physical violence, misrepresentations, illegal conduct or threats of illegal conduct. There is no evidence here that Columbia engaged in any conduct that would take it outside of its privilege to protect its own business interests.

There are other reasons why Columbia is entitled to judgment as a matter of law on Count II. To be liable for tortious interference, the offending party's interference must be "both direct and intentional." *Merrill Lynch Bus. Fin. Servs., Inc. v. Performance Machine Sys. U.S.A., Inc.*, No. 04-60861-CIV-MARTINEZ, 2005 WL 975773, at *7 (S.D. Fla. Mar. 4, 2005). *Accord McCurdy*, 508 So. 2d at 383; *Lawler v. Eugene Wuesthoff Memorial Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986); *Rosa v. Florida Coast Bank*, 484 So. 2d 57, 58 (Fla. 4th DCA 1986). In *Lawler*, a physician sued a hospital that terminated his staff privileges, claiming the hospital tortiously interfered with his business relationships with patients and doctors in the community. The court dismissed the claim, concluding it did not allege a direct interference with the plaintiff's business relationships.

> The complaint failed to allege direct interference by the [hospital] with the doctor/patient, doctor/doctor relationships. Clearly, the alleged interference with these relationships was only an indirect consequence of the termination of Dr. Lawler's staff privileges.

497 So. 2d at 1263. Similarly, there is no evidence that Columbia directly interfered with the relationship between Romika-USA and the bank. At most, Romika-USA complains that Columbia failed to waive the discrepancies in its presenting documents. These acts of

11

omission (or even if Columbia affirmatively notified the bank that it would not waive discrepancies) are not the kind of direct action required under Florida law.[9]

Finally, this Court notes that Romika-USA has put forth no evidence that Columbia's refusal to waive certain discrepant documents was done out of malice. Florida law is clear that the qualified privilege to interfere "is not negated by concomitant evidence of malice. It is only when malice is the *sole* basis for interference that it will be actionable." *McCurdy*, 508 So. 2d at 383. *See also Ernie Haire Ford, Inc.* 260 F.3d at 1294 n.9 ("[i]n other words, the party must be interfering *solely* out of spite, to do harm, or for some other bad motive"); *Johnson Enters. of Jacksonville, Inc*, 162 F.3d at 1322; *Menendez v. Beech Acceptance Corp.*, 521 So. 2d 178, 180 (Fla. 3d DCA 1988) (a defendant's protection of its own financial interest "even if tinged with animosity and malice, does not give rise to a cause of action for interference"); *Ethyl*, 386 So. 2d at 1225. There is no evidence that Columbia was motivated by malice, and there is undisputed evidence that Columbia, in failing to waive the discrepancies in Romika-USA's documents, acted to protect its own business interests and acted consistent with the Letter Agreement and the letter of credit.

For each of these reasons, this Court grants summary judgment for Columbia on Count III.

---

[9] In an affidavit Romika-USA filed in opposition to summary judgment, Deepak Deshponde described Columbia's offending conduct in this way: "There are two ways that one can delay payments. One is complete silence and non-acceptance of the waivers; or two is specific communication. And in this case, . . . while there may not have been anything in writing asking HSB [sic] to delay payments, there was definitely a delay caused by non-acceptance and non-communication from Columbia to HSBC. While Columbia never said they won't pay, . . . they continue to accept and never pay." [DE 140, ¶ 18].

## C.   Count IV, Breach of Third-Party Beneficiary Contract

Romika-USA sues Columbia in Count IV for breach of the Letter Agreement, as a third-party beneficiary to that contract. In fact, Romika-USA was a party to the Letter Agreement, and it acknowledged as much in its Amended Complaint. [DE 49, ¶¶ 51, 53]. Florida law draws a distinction between parties to contracts and third-party beneficiaries; the two are mutually exclusive. Another division of this Court recently reviewed this aspect of Florida law:

> The reported cases discussing third party beneficiary status uniformly draw a distinction between "parties to a contract" and "third party beneficiaries." *See, e.g., Weimer v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 102 (Fla. 4th DCA 1969) ("Florida has long recognized the propriety of a third party beneficiary who is not a party to a contract suing for damages as a result of the acts of one of the parties to the contract"); *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030-31 (Fla. 4th DCA 1994) ("[The exception to the rule that only a party to a contract may sue another party to the contract for breach] is where the entity that is not a party to the contract is an intended third party beneficiary ..."). Even a case upon which [the cross-plaintiff] relies in its briefs reflects the distinction between a third party beneficiary and a party to the contract. *See Jenne v. Church & Tower, Inc.*, 814 So. 2d 522, 524 (stating that the test to determine whether a third person is a third party beneficiary is whether "the parties to the contract intended that [the] third person [benefit from the contract]"). . . . The Eighth Edition of Black's Law Dictionary defines a "third party beneficiary" as "a person who, though not a party to a contract, stands to benefit from the contract's performance.
>
> In short, a third party beneficiary is *not* a party to a contract.

*CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598 CIV, 2007 WL 117934, at *2-3 (S.D. Fla. Jan. 10, 2007). *See also Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc.*, 903 So. 2d 251, 254 (Fla. 3d DCA 2005) ("A *non-party* is the specifically intended beneficiary only if the contract clearly expresses an intent to primarily and directly benefit the third party

or a class of persons to which that party belongs.") (citations omitted; emphasis added).

Here, the Letter Agreement plainly shows that Romika-USA, like Columbia and Romika-Canada, was a party and signatory to that agreement. [DE 49, Ex. A]. Romika-USA can sue for breach of that contract, as it did in Count III of its Amended Complaint, but it cannot seek to recover on that contract as a third-party beneficiary. Accordingly, this Court grants summary judgment for Columbia on Count IV.

## II. The Motion to Dismiss Count III

Romika-USA filed this action more than two years ago, and in the intervening years has caused a series of unreasonable delays in the prosecution of this lawsuit. [*See e.g.*, DE 68, 74, 83, 102, 106, 116, 137]. A consequence of one such delay, Romika-USA's failure to timely give Columbia its expert disclosures, was this Court's order striking Romika-USA's expert witness. [DE 106]. Five weeks before trial,[10] with discovery closed and Columbia's summary judgment motion pending, Romika-USA sought leave to dismiss Count III of its Amended Complaint. [DE 143]. At the April 11, 2007 oral argument, Romika-USA clarified that it seeks that dismissal without prejudice. [DE 151]. Columbia opposes dismissal unless it is with prejudice. [DE 144].

It is clear that Romika-USA "enjoys no right to a voluntary dismissal without prejudice." *Mosley v. JLG Indus., Inc.*, 189 F. App'x 874, 875 (11th Cir. 2006). Federal Rule of Civil Procedure 41(a)(2) provides that an action cannot be dismissed at this late juncture "save upon order of the court and upon such terms and conditions as the court

---

[10] In August, 2006, this Court specially set this case for trial on May 7, 2007. [DE 87].

14

deems proper." In this Circuit

> [t]he district court enjoys broad discretion in determining whether to allow a voluntary dismissal under Rule 41(a)(2). In most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, *other than the mere prospect of a subsequent lawsuit*, as a result. The crucial question to be determined is, [w]ould the defendant lose any substantial right by the dismissal. In exercising its broad equitable discretion under Rule 41(a)(2), the district court must weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissal as are deemed appropriate.

*Pontenberg v. Boston Scientific Corp.,* 252 F.3d 1253, 1255-56 (11th Cir. 2001) (citations and internal quotation marks omitted). *Accord Mosley*, 189 F. App'x at 875.

Given the eleventh-hour timing of Romika-USA's motion, Romika-USA's culpability for unnecessarily prolonging this litigation, and the substantial legal fees Columbia has had to incur in defending this lawsuit, the only way to grant Romika-USA's motion and still "do justice between the parties" is to condition dismissal upon Romika-USA's payment of Columbia's taxable costs and reasonable attorneys' fees incurred in defending this action should Romika-USA later re-file this breach of contract claim. These conditions would substantially protect Columbia from the unfairness of duplicative litigation, and have been recognized as reasonable by this circuit and other district courts in this circuit. *See Roberts Enters., Inc. v. Olympia Sales, Inc.*, 186 F. App'x 871 (11th Cir. 2006); *Versa Prods., Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1328-29 (11th Cir. 2004); *Brown v. ITPE Health and Welfare Fund,* No. 2:05CV1002-ID, 2006 WL 2711511, at *3 (M.D. Ala. Sept. 21, 2006); *Geary v. WMC Mortgage Corp.*, No. 1:05-CV-631-TWT, 2006 WL 2532668, at *2 (N.D. Ga. Aug. 30, 2006).

**III.     Conclusion**

For the foregoing reasons, this Court

ORDERS and ADJUDGES that:

1.     Defendant Columbia Sportswear Company's Motion for Summary Judgment [DE 127] is **granted as to Count II** (tortious interference) **and Count IV** (breach of contract, third-party beneficiary), and

2.     Romika-USA's Motion for Leave of Court to Voluntarily Dismiss Count III of Plaintiff's Amended Complaint [DE 143] is **granted as to Count III**. Count III is dismissed without prejudice on the condition that, should Romika-USA re-file the breach of contract claim against Columbia, Romika-USA must first reimburse Columbia for all taxable costs and reasonable attorneys' fees Columbia has incurred in defending this lawsuit.

Final judgment will be entered by a separate contemporaneous order.

DONE and ORDERED in chambers in Miami, Florida this 14th of May, 2007.

_____
CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

Copies to all counsel of record